Good morning, your honors. May it please the court. When a person's intent or state of mind for traveling is at issue and relevant in the case, the Supreme Court held in 1892 that the person's declarations at the time of the travel as to his reasons for going abroad have always been held to be admissible. That's the Mutual Insurance Company v. Hillman case that both parties have cited because it's the leading Supreme Court decision on the state of mind exception. And so 125 years ago, the Supreme Court considered this settled law that exactly the type of evidence we were trying to introduce here- How do we know what kind of evidence that was? You never proffered it. Well, I understand there was not a formal proffer or- Well, the rule doesn't require that. The rule- Of course not, but the only way- that's the traditional way attorneys get review of evidentiary decisions. The attorney says, I'll make a proffer, and if it's extensive, judges have let me make a proffer during the break. We'll take a break, you make the proffer on the record, and I'll make my proffer. I understand that might have been the preferable way to proceed. Preferable may be the only way, right? Well, the rule, Federal Rule of Evidence 103A2, says that that's only required if the substance is not apparent from the context. We don't know what it said. We don't know what this girlfriend on September 1st was going to say. We don't know the word for word- We don't even know the subject, except that she expressed her intent to her. Well, I respectfully disagree that we don't know the substance of what was going to be said. Where do I find that in the record? Well, this all started at 222 of the appendix, when Ms. Liu's friend was on the stand, and we were asking, because what we wanted to get in was any kind of statements about her motive or intent with regard to her international travel. And the government objected, and the district court- Well, we knew that she was intending to refuse her husband's order to stay, not to travel to stay. I mean, when she sent the email, he sent the email back immediately. She sent it from the airport. He said immediately, don't go. I'll pick the daughter up at the school or whatever. And she went nonetheless. Well- And so there's a pretty clear intent to deprive him of that right of visitation and presence and so forth. Well, the government could certainly argue that, and the jury would have been free to believe that. They did. Well, because we were denied the opportunity to present our theory of the case, our defense was that her reasons for travel were something other than custodial interference. And we were denied the opportunity to get relevant- I know. You keep focusing on hers. The question is whether the child's- there were one-way tickets for the child and the grandmother. And the question was whether she was shipping the child with the grandmother as opposed to her. She was coming back. All the evidence you put in is about the mother. Well- The mother had a job, and she was planning to come back for a presentation and this type of thing. Well, there's certainly circumstantial evidence that the jury could have used to conclude otherwise. But that's why it was important for us to get in that the mother- well, I understand. Our argument- But I do need to know where can I find in the record what this girlfriend would have said on September 1st. Well, our argument was that because the mother's trip was temporary, and we had evidence that the child had made temporary trips back and forth to China before, that we could argue that the child was coming back. And there was circumstantial evidence to support that in that the son's belongings were still here, that the mother was making plans to enroll him in school. And so we wanted to bolster that evidence with additional direct, credible, competent evidence admissible as to her state of mind in intending to come back. And the district court prevented us from getting anything in at the threshold level, and so we weren't able to do that. I'm not quite sure that's correct. And when I look at the testimony from the girlfriend, what she was allowed to testify to was that your client stored some of her stuff in Altron's basement. She'll be back very shortly to retrieve it. She left almost everything that she owns, which was identified as suitcase, clothing, documents, including food and grocery items. She left most of her child's clothing. She indicated she planned to return to retrieve her possessions. She sent a picture of herself and her child at the airport, saying, wait for us to come back. And that's a lot of testimony. I can't imagine what you didn't get in, if you got all that in. Specifically that she had expressed a state of mind at the time of her travel that she intended to return. And that direct evidence directly from her mouth is... All this is directly from her mouth. She's being quoted by her girlfriend. Well, certainly we... And there were additional witnesses that we wanted to get in more evidence that she had expressed at the time. Because the government's argument is that these are biased witnesses that want to testify for her. But the accumulation of those witnesses would be helpful to us. And certainly having her directly saying that my state of mind at this time for traveling is to make a temporary trip for these stated purposes about the birth and that it's not for the purpose of custodial interference. And so we were not able to counter the government's argument with our theory of the case. Because our whole defense was, why would somebody go all the way to China on a temporary trip solely for the purpose of interfering with weekend visitation rights? Because the government's argument was, well, she's going all the way to China. She's obviously intending to permanently deprive the father of any custodial property. Well, that was their argument. I know, but it seems to me the consistent argument is that she was trying to have her child go with her grandmother back to China and take care of the child. And she was, the mother was intending to come back home. Well, respectfully, Your Honor, she can take that travel with the child for any number of purposes, as long as it's not for the specific intent of interfering with custodial rights. Mere international travel with somebody under a custody order is not a federal crime. It may be a matter for the family courts, and there's been continuing litigation in the JDR court about that that's affected her custodial rights. Is your argument now a sufficiency of the evidence? No, we're not arguing that. But that's not the test for harm with regard to erroneously excluded evidence. We think that with this evidence, with direct evidence from her, what she said at the time regarding her state of mind, the reasons for her travel, was absolutely critical to rebut the government's case, and it couldn't have helped to make a difference. And the test is whether this court can say with fair assurance that it wouldn't have made any difference. And when the jury was out, as long as it was, overnight, and in fact there was actually a snow day between, so it was quite some time that the jury had this case to deliberate and to think about, and they came back with multiple questions, and the evidence was fairly short in this case, and there was only one issue. And so her state of mind was absolutely vital for us to be able to get that in and to explain why she was going for some reason other than custodial interference. And what was left with the record is that the government was able to argue that almost that her reasons didn't matter. And in fact, they said so. On page 355 in their argument to the jury, they said she could have been traveling for, quote, any number of reasons as long as it had the effect of interfering with custodial rights. But that's not what the law requires. They're trying to turn it into a strict liability offense. And this dovetails somewhat with our jury instruction argument. I'm happy to answer additional questions about her evidentiary argument, but these really are intertwined. Excuse me, Mr. Bryant, how do you deal with the fact that the custody agreement prohibited either party from removing the child from the United States without the express written notarized consent, advanced consent of the other parent? I understand. Our argument at trial was that her understanding of the agreement was such that what she did by giving advance notice was sufficient under the custody agreement. What, a matter of a few hours oral notice is sufficient when the custody agreement says advanced notarized written consent? Well, it seems to me you have a problem with your Well, again, our position is that even if that's a violation of the custody order, that that's an issue for the JDR court to settle, but it's not necessarily a violation of federal law if, and certainly the government could argue that. The government could put that to the jury. But we should have been allowed to get evidence and a jury instruction on our theory of the defense that her intent was something other than custodial interference. But didn't the judge charge that the government had to prove she acted with the intent to obstruct the lawful exercise of parental rights? And didn't he also say she has to have done it deliberately with the purpose of interfering with the parental rights of the parent? Two responses to that. One is that it was necessary to define what parental rights were at issue because then it opens the door to the jury convicting based merely on a violation of the letter of the custody order rather than upon finding that she had the necessary intent. The whole issue was whether the parental right was denying him the visitation rights by removing the child from the country. That was the whole issue. And she, over his protest, she, and this occurred at the airport, she didn't even notify him until she got to the airport. And from the airport, she says, last night at midnight, my grandmother became ill. That was the email. And I have to leave the country. He says, no, don't do that. You can't do that. And this is against the background that he's been asking for visitation rights all summer. Well, we understand. But again, even if she's aware of that consequence, if her intent to travel is something other than the intent to violate custody. You think the intent was in order to address the mother who became ill at midnight? And to get the birth certificate for the son so she could enroll him in school. How do you share that with the notion that she bought the ticket a week in advance and she got her visa even before that? Well, she knew that she had to travel to China to get an original birth certificate for her son. And at the moment, I don't recall the exact chronology of that. The chronology is on the 27th, she got her visa. On the 28th, she bought her ticket. On the 1st, her girlfriend came home. On the 4th, she travels without prior notice to the airport. At the airport, emails him. He says, no, don't go. That's the scenario. Well, I understand. And the government was free to argue that that is an indication. They did argue it. And we should have been allowed to counter that. With what evidence? That's my biggest problem. With the evidence that we were prevented from getting in. What is it? As to her motive or intent or plan, which is exactly what the rule says, categorically her state of mind. How do we know that the girlfriend wouldn't have said she did it in order, she was angry at her husband and she didn't admire her husband or visitation rights? Well, then the government wouldn't have objected to that, I can't imagine. The government objected in principle. They objected. But my point is that hypothetical reveals the problem we have in reviewing your argument. Well, respectfully, Your Honor, the government objected to anything at such a threshold level. But that's not the issue. The question, the court, this is the one objection here and the court sustained it. Now, the question is how do we review that? What do you want us to look at to review that? Well, the government said that she can say the what but not the why. She can say that she's going to China but she can't say why. But then later on in its objections, not only with Ms. Outram's testimony, this I think was 227 of the appendix, but then at other points, 313, 317, 324, the government was objecting to the plan, just the fact that she's traveling to China temporarily at all. And so the judge shut it down before we were ever even able to get to that point and did it at such a level of generality that we weren't able to proceed. And once the judge had ruled, the door was shut and we did not need to, under the rule, bring it up over and over and over again. The door's not shut to a proper level. He rules, you want to protect the record, then you have to make a trial. I understand that's the ideal scenario. In the heat of a trial with a judge who wants to move things along, we're not always able to go chapter and verse. We're always able to do that. And it ought to be an instruction to every lawyer that you do that. In other words, if you think evidence is critical and the judge keeps it out, you'll always prosper. Well, I understand that's our wish, looking at the cold transcript. But in the tenor, in the heat of the trial, the substance was apparent from the context because that's the reason for our questions, that's the reason for the government's objection. What are you suggesting the substance was? The substance was her motive and intent and plan with regard to her reasons for traveling. And the Supreme Court's held that. I understand, but what were those plans? To travel for, to get the birth certificate and to visit the sick relative. She had that evidence in. Not. She said it in e-mails. She said it in two e-mails. Well, that's correct. We wanted this to come from her mouth, in her words, from these other witnesses. And the government could have objected that that was cumulative, but that's not what they objected on. They shut the door, and this would not have added that much to the trial, but it was so direct, relevant, probative, competent evidence that should have been admitted. And then we should have also gotten the jury instruction that dovetailed with it going to her. I had a hard time understanding your jury instruction argument. I looked at your instructions, and I looked at the court's instructions, and they look pretty similar. Well. It's just not the very same language, but it looked very similar, substantively. We feel what's especially important is that the jury should have been instructed that her intent to interfere with custodial rights had to have been a significant purpose for the trial. Because otherwise. You said it had to be the purpose. Well, I think that's an. Even better for you. Well, I appreciate that, but I think it's an overly literalistic reading of it because we all understand that the human mind is complex, and I don't think anybody acts for a single purpose at any time. I understand, but let's address your argument. You keep sliding off on the human character and the heat of the trial, all these things. The instruction that the judge gave is more beneficial to you than the one you requested. You say a substantial purpose, and the judge said the purpose. Isn't that what he said? Well, he did say that. I think in context that's not really how it could be read as the sole purpose. You don't have to say sole purpose. The purpose is much better than a substantial purpose. Well, the court then went on to instruct that a person ordinarily can be assumed to intend the consequences of their actions, and so most people wouldn't understand that there are multiple consequences for every action, and so that leads to a natural conclusion that there could be multiple intents at stake, and the government certainly argued that by saying that she could have traveled for any number of reasons, and that's the reason we needed this instruction, that we could have argued in light of that. If there's nothing else now, I'll reserve the rest of my time. Thank you, Mr. Bryant. Have a seat. Your Honors, good morning. May it please the Court. Chris Cazone for the United States. As Your Honors have already asked defense counsel this morning, at no point before the district court did Ms. Liu present the actual statements that she allegedly made to her acquaintances about her intent in traveling to China. We still don't know what those are, and that's not merely a procedural technical point that the government is objecting to. Without those statements, the district court and this court cannot evaluate whether or not the alleged statements made by Ms. Liu meet the three-factor test for liability, contemporaneousness, and relevance. And I would submit that in many circumstances, especially in the facts here where Ms. Liu knew of the order, knew that she was required to provide notice within 30 days, had already deceived her estranged husband when she purchased the ticket, admitted that she had not told him about her travel plan in advance. When we have the email and evidence, there are many circumstances that depending on precisely what... The reason she gave in the email back to him was an outright lie. That's correct. Demonstrably on the record. And that should go to intent too. Absolutely. And under Rule 803, Hillman of course, which was the case that Mr. Bryant discussed, came before Rule 803 was promulgated. But Hillman makes very clear, and by the way, in Hillman the Supreme Court itself, not just the district court, had extensive records of what the actual proffered statements were going to be to evaluate whether they should fall under the exception. But the court in Hillman said that statements of intent can only come in if there are circumstances precluding suspicion of misrepresentation. It talked about whether there was a misconduct or grounds to suspect collusion and whether the person making the statement was potentially bent on an expedition of mischief. Without knowing those precise statements, we obviously can't respond to what the facts were when Ms. Liu was making them. But under the circumstances here, the government would suggest that there's plenty of reason to suspect suspicion or mischief when she's making these statements. But even without them, let's go on to the harmlessness point. Because Ms. Liu had ample opportunity to get this evidence in front of the jury, presented all of these reasons, the birth certificate, the sick relative, her plans to come back for business, the toys left, the car left, purchasing a house. All of this got in front of the jury. All of it was mentioned in closing argument. And on the specific issues that Mr. Bryant talked about here, the sick relative and the birth certificate, Ms. Liu's own words were admitted in an exhibit bearing a government exhibit number, her email, where she said, I need to travel to visit my sick grandmother, whether or not it's a lie, and that she needed the birth certificate. So the idea that the additional hearsay statement that she made to Ms. Utrim would have provided any additional help to her, she can't clear harmlessness on that basis. She also can't clear harmlessness here, even if there were error, just given the overwhelming evidence of guilt. And I think the court's already gotten to that. The months of evidence showing her intent to obstruct Mr. Refock's parental rights, her intent to deceive, that was obvious, that she admitted to Ms. Utrim, and perhaps most powerfully, the email exchange the day of, while she's sitting at the gate waiting to board the plane. Unless the court has any questions about the jury instructions, I'd just like to quickly touch on a few other things that Mr. Bryant raised. You raised, you questioned whether or not the objection was properly and clearly made by the defendant to the jury instructions. Why? I don't understand that. He gave them proposed jury charges. Why do you claim that it's not clear? So there's two specific issues that Ms. Liu is raising now when it comes to the jury instructions. One is the definition of parental rights, and two is this definition of intent. She did submit instructions on both. After the jury was instructed, she renewed her objection to the intent instruction, and the government concedes that she preserved her objection there. But this court recently restated in McDonnell that the proper time for making an objection to a jury instruction is after the judge has provided instructions to the jury. And I believe that's footnote 15. Footnote 15 in the McDonnell. And that's after proposed instructions have been given to the trial judge? That's correct. You still have to... The court said in McDonnell, this is 792 F3rd 504, footnote 15, we remind the district courts and counsel that the proper time for cementing objections to instructions is after they are given the quote before the jury retires to deliberate, and that's quoting Federal Rule of Criminal Procedure 30D. And that makes sense because oftentimes the district judge, I shouldn't say oftentimes, sometimes the district judge will omit an instruction, misstate an instruction, add a word just in the long process of reading an instruction so that the proper time is to wait until after they've been given to make that objection. Mr. Bryant raised the issue about this being a temporary trip. Your Honors, I think I've already honed in on that. That's a red herring. Once Mr. Roifock's parental visitation rights were violated, once his weekend visitation rights were made unavailable by the travel to China, his rights were violated. Whether that's one weekend, whether that's six weekends. More importantly, what she, the fact that she intended to come back, and he acknowledged that, that she would come back, and he said I'll keep the child until you come back. So the fact that she was coming back and all the indications doesn't mean that the visitation rights aren't deprived, and for how long? Because the child did just have a one-way ticket. And the grandmother just had a one-way ticket. And as Ms. Liu concedes in her brief on appeal, the child was going to be gone for at least two to three months, and that clearly, that time period would have violated it. How do you know that? I don't know. That's just based on what they say in their brief on appeal. I believe it's page four off the top of my head, but I'm not sure. But they state in their brief that the plan was for him to be there for two to three months. I'm not sure that there's a record, trial record, to support that. No, we can't take that into account, can we? Mr. Bryant said that they were unable to counter the government's arguments on her intent in traveling. Again, I submit that's just not the case. They had ample opportunity to do so and, in fact, did vigorously. Mr. Bryant pointed out that mere international travel when a child is under a custody order is not enough to violate the parental kidnapping statute. I'm not sure that's necessarily the case. In the Second Circuit Miller case, which they cite in their brief and in which the court found that there was, quote, overwhelming evidence of guilt, the court found that when a defendant has knowledge of parental rights through a child custody order and travels despite that knowledge, the jury can find intent to travel to deprive the other parent of custody rights. So I don't think that international travel alone could be enough, but international travel coupled with knowledge certainly could be sufficient evidence, and they don't argue otherwise here. On the point of the jury deliberating for a long time, I just want to clarify, by my rough count, it was only two hours and 26 minutes. The jury got the case late on the second day and returned the verdict before noon. Sorry, got the case late on the second day of trial and returned a verdict just before noon the next day of deliberations. So it may have been overnight, but in terms of total deliberations time, I'm sure. Unless the court has any further questions. I've got a question unrelated to the issues in the case. Yes. How does a person go to an airport and get them to turn an airplane around over airspace in another country? I was just astonished. That is not in the record, and I have no idea. I can't even get my seats changed on an airplane, so I can't imagine. I can imagine. It's the United Airlines Council saying, we're going to get sued if we don't bring them back. Thank you, Your Honor. I'm surprised you have some time remaining to reply. Thank you, Your Honor. Just a few points very briefly. In regard to the government's argument about the Miller decision and mere knowledge being enough, the plain language of the statute says that the person has to travel with intent to obstruct the parental rights. And so it may be that the jury can infer intent from knowledge, but they do have to make a finding of specific intent. And that's why it was so crucial for us to get in that her specific intent was something other than travel, even if it was for an extended period of time. My recollection of the record is that she said she was not sure how long it would take to get the birth certificate from the Chinese bureaucracy, and that's why the child was on a one-way ticket, because she didn't know exactly how long it would take. Except she was coming back on the 26th and did come back on the 26th. She had a meeting on the 27th. Well, she never got to China, so she never – I understand. It was not a matter of her coming back. But that was her intent. Right. That was her intent, and there was e-mails to support her communications with her job. Right. But her mother, the child's grandmother, who had been the primary caretaker of the child for most of his life, was traveling with the child, and the plan was for the grandmother, the child's grandmother, our client's mother, to come back once the birth certificate had been obtained so that she could enroll the child in the school. This was something that – well, her – I thought her visa ran out as she went back home. For this trip. And so that's why we wanted to get in evidence that the government objected to – Well, but I'm asking, where is in the record that her plan was to come back, the grandmother? That's what we wanted to get in from the questioning of the FBI agent who questioned her at the time she was there. It's not in the record anywhere, is it? Her specific words, no. Or any suggestion that her plan was to come back, the grandmother. Well, we submit that that's what – Well, I want to know, is it in the record? It's not in the record. Okay. Well, then it seems to me we ought not be arguing it. Well, we think that it was an error that we were precluded from getting into those questions. Well, how do we know you're right about that? Because it's not in the record. Well, because we were barred from even going down that road. And I understand the court's position, if I can move on very quickly. With regard to the harmlessness of the error that the government discussed, we recognize that there was some evidence in the record about Ms. Liu's intent, but we felt it was important to corroborate that evidence because her email or contact with the father of the child, the government was allowed to argue that this was subterfuge, that this was a ruse or a lie. And if we could have presented evidence corroborating that, that she had told other people out of that context of the discussion with the father, that's why it was important to corroborate that, and that's why it was harmful to exclude this. Well, you know, it's pretty strange. You'd think they would corroborate her story. Her story is, I got a telephone call last night indicating my grandmother's ill, in a serious condition, last night. And therefore, I have to travel as soon as possible to China. Go ahead. I'm sorry. And the record shows that her plans were formed a week or more, probably more than a couple of weeks before. Because she also had the intent to go to China to get an original birth certificate for the child, and that's something that she knew about well in advance through discussions with people involved with the school that she wanted to enroll the child in. And so that's why— So he says, if you need to get a birth certificate, leave the child here, and you can go, and we'll see you when you come back. That's what he said in his email. And she took him nonetheless, or planned to take him nonetheless. Actually, she did. Went over the airspace in Canada. Right. And our understanding is that it was United Airlines officials who made the decision to turn the plane around. But—and I'm sorry, I've lost the thread of your question. We should have been allowed to get in evidence that she had formed an intent, and again, her travel with the child, even if it has the effect of violating it, is not necessarily a federal crime if she doesn't have the specific illicit intent. How about for the purpose of depriving him of the visitation rights? Well, the word in the statute is intent. She traveled for the purpose of violating his rights. That's a federal crime, right? Yes, and the jury would have been free to— The judge told the jury. The jury could have been free to conclude that, but we should have been allowed to present our theory of the defense with regard to the evidence and her instruction. Thank you, Your Honors. Okay. I'll ask the clerk to adjourn.
judges: William B. Traxler Jr., Paul V. Niemeyer, Barbara Milano Keenan